IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 8:21-cr-00362 |
| | * | |
| BRIAN PATRICK WERTH, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, and LaShanta Harris, Assistant United States Attorney, respectfully submits this memorandum in aid of sentencing the Defendant, Brian Patrick Werth, scheduled for November 26, 2024, at 1:30 p.m. For the reasons set forth herein, the government recommends a sentence of 70 years to the custody of the Bureau of Prisons, followed by a lifetime term of supervised release.

**I.  INTRODUCTION**

On June 29, 2022, the Grand Jury for the United States District Court for the District of Maryland returned a four-count Superseding Indictment charging the Defendant with offenses including production of child pornography, coercion and enticement of a minor, and committing a crime while being a registered sex offender. ECF No. 24. Counts One and Two each charged the Defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a). Count Three charged the Defendant with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Count Four charged the Defendant with committing a felony offense involving a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A. On March 13, 2024, after a trial, a unanimous jury returned a guilty verdict on all counts. ECF No. 105.

## II.      PENALTIES AND SENTENCING GUIDELINES CALCULATIONS

Count One and Count Two each carry a mandatory minimum term of imprisonment of 25 years and a maximum sentence of 50 years' imprisonment. Count Three carries a mandatory minimum term of imprisonment of 10 years and a maximum sentence of life. Count Four carries a mandatory 10-year sentence, statutorily required to be applied consecutive to any other count. *See* 18 U.S.C. § 2260A. ECF 117 (Presentence Investigation Report, ¶¶ 106-7.)

There is one change that the Government recommends be made to the Presentence Investigation Report ("PSR") filed July 16, 2024, ECF No. 117. On page 25, the column with the heading "Recommended Sentence" for Counts One through Three indicates that the United States' Probation Office recommends a sentence of "Life." *Id*. However, the Recommended Sentence cannot exceed the statutory maximum for each count, which is 50 years. *Id*. Count Three is the only count that has a statutory maximum of life imprisonment. *Id*. The Government otherwise concurs with the calculations of the United States Sentencing Guidelines ("USSG") as set forth in the PSR. *Id*. at ¶ 108. That is, the final adjusted offense level is 43. *Id*. at ¶ 48. The Defendant's Criminal History Category is II. *Id*. ¶ 52. And as a result, the sentencing guidelines range is life imprisonment. *Id*. at ¶ 108.

## III.     THE RECIDIVIST ENHANCEMENT APPLIES TO COUNTS ONE AND TWO

The Defendant has informed the Government and the United States Probation Office ("USPO") that he objects to paragraph 106 of the PSR. Specifically, he objects to the application of the application of the 25-year mandatory minimum penalty on Count One and on Count Two. He argues that the mandatory minimum for each offense should be 15 years because his prior 2016 fourth degree sexual offense conviction does not constitute sexual abuse or contact with a minor as contemplated under 18 U.S.C. § 2251(e). The Defendant's interpretation of how the

enhancement should be applied is incorrect. As discussed below, paragraph 106 of the PSR should remain unchanged because the mandatory minimum term of imprisonment for Count One and Count Two is 25 years.

The Defendant is charged in Count One and Count Two of the Superseding Indictment with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). Section 2251(e) provides an enhanced penalty for a violation of 18 U.S.C. § 2251(a) if the Defendant has a prior conviction "relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children." 18 U.S.C. § 2251(e). The penalty enhancement would mean that instead of the mandatory minimum sentence being 15 years imprisonment, the mandatory minimum would be 25 years.

The conduct alleged in Count One and Count Two occurred after the Defendant's conviction for Fourth Degree Sex Offense, in violation of Maryland Criminal Law Code Section 3-308(b)(1), in the Circuit Court for Montgomery County, Maryland, on October 24, 2017. The Defendant argues that this prior state conviction does not qualify under § 2251(e) because the Fourth Degree Sex Offense did not require proof that that victim was a minor and it does not "relate to" any of the § 2251(e) generic sexual offenses.

### A. Categorical Approach and Modified Categorical Approach

The Defendant's prior conviction was for Sex Offense in the Fourth Degree, in violation of Title 3, Section 308(b) of the Annotated Code of Maryland ("Md. Code Ann., Crim. Law § 3-308(b)"). Sexual Offense in the Fourth Degree prohibits "1) sexual contact with another without the consent of the other; 2) . . . a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 4 years older than the victim; or 3) . . . vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at

least 4 years older than the victim." Md. Code Ann., Crim. Law § 3-308(b) (2024). "Sexual contact", as used in §§ 3-307, 3-308, and 3-314 of this subtitle, means an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party." Md. Code Ann., Crim. Law § 3-301 (2024).

Someone could be convicted under Md. Code Ann., Crim. Law § 3-308(b) for engaging in sexual contact with another person without their consent in section (b)(1). In the alternative, someone could also be convicted under Md. Code Ann., Crim. Law § 3-308(b) for engaging in a sexual act if the victim is either 14 or 15 and the actor is at least four years older than the victim under subsection (b)(2). This means that this Maryland statute should be considered divisible. *United States v. Graves*, 653 F. Supp. 3d 242, 245 (D. Md. 2023) ("When the state statute is divisible, meaning it sets forth multiple, alternative versions of the crime with distinct elements, the modified categorical approach applies." (internal quotations omitted)).

In order to assess whether a defendant's prior conviction qualifies as a predicate conviction, the Fourth Circuit typically applies the categorical approach. Under the categorical approach, courts generally "look only to the fact of conviction and the statutory definition of the prior offense" to determine if they are a categorical match that would warrant a sentencing enhancement. *United States v. Colson*, 683 F.3d 507, 510 (4th Cir. 2012). However, if the defendant was previously convicted under a statute that is "divisible – *i.e.*, comprises multiple, alternative versions of the crime," courts have employed what has been termed as the modified categorical approach to determine which part of the statute the defendant was convicted under. *Descamps v. United States*, 570 U.S. 254, 262 (2013).

Since there are varied crimes and categories of the crime for which someone could be convicted under Md. Code Ann., Crim. Law § 3-308(b), the question of whether the Defendant's

conviction qualifies as a predicate offense for the purposes of the enhanced penalty "cannot be determined categorically from an examination of the elements of the offense and the mere fact of his conviction." *Spence*, 661 F.3d at 199 (4th Cir. 2011). Instead, the court should apply the modified categorical approach to determine "the nature of the underlying crime" to determine whether the defendant's conviction relates to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, as described in 18 U.S.C. § 2252A(b)(2). *Id*.

The modified categorical approach allows courts to "look beyond the statutory elements to other documents used in a case to figure out the elements on which the conviction necessarily rested. *United States v. Spence*, 661 F.3d 194, 198 (4th Cir. 2011). For prior convictions that were based on a guilty plea, such as the one at issue in this case, courts can review "charging documents, plea agreements, plea colloquy, and explicit factual findings made by the trial judge." *Id*.

In the prior conviction, the Application for Statement of Charges states that the Defendant placed his hand in the V1's pants inside her underwear and he massaged her vagina and placed his finger inside of her vagina more than five times. PSR ¶ 51. V1 was 16 years of age at the time of the incident. *Id*. Because the other two violations of Sexual Offense in the Fourth Degree require the victim to be 14 or 15 years old, by the process of elimination, it is clear that the Defendant was convicted of the crime described under Md. Code Ann., Crim. Law § 3-308(b)(1), which criminalizes sexual contact with another without the consent of the other. In order to determine that the Section 2251(e) enhancement applies, Md. Code Ann., Crim. Law § 3-308(b)(1) must "relate" to "sexual abuse" as that term is defined in 2251(e). Recent Maryland District Court case *United States v. Graves* is instructive on this point. *United States v. Graves*, 653 F. Supp. 3d 242, (D. Md. 2023).

In *Graves*, the Court considered whether to apply the Section 2251(e) enhancement to the

prior conviction of Third Degree Sex Offense. The Court's initial consideration was the meaning of "abusive sexual contact involving a minor" as used in § 2251(e), with a focus on the meaning of "abusive sexual contact." *Graves*, 653 F. Supp. 3d at 246. The *Graves* Court settled on "abusive sexual contact involving a minor" to mean "contact that is characterized by the 'misuse or maltreatment' of a minor 'for a purpose associated with sexual gratification.'" *Graves*, 653 F. Supp. 3d at 247.

The question for this court in this case is whether the Defendant's prior conviction of the offense of Fourth Degree Sex Offense was done for "a purpose associated with sexual gratification." The *Graves* court observed that in *United States v. Alfaro*, 835 F.3d 470, 473 (4th Cir. 2016), the Fourth Circuit defined "forcible sex offense" for purposes of a sentencing enhancement under the United States Sentencing Guidelines to mean "an offense involving sexual conduct with another person" that is "not consensual." *Graves*, 653 F. Supp. 3d at 249. Similarly, in this case, even though the prior conviction for this Defendant does not specifically reference sexual conduct, this court can still apply the enhancement because Defendant's behavior of vaginally penetrating the victim is sexual in nature and it therefore relates to sexual abuse, abusive sexual contact as stated in the 2251(e) enhancement statute.

There is additional support for the recidivist enhancement in Supreme Court precedent. In *Lockhart v. United States*, 577 U.S. 347 (2016), the Supreme Court addressed this issue in the context of similar language in 18 U.S.C. § 2252(b)(2), which states that a defendant convicted of possessing child pornography, under 18 U.S.C. § 2252(a)(4), is subject to a 10-year mandatory minimum sentence if he has a prior conviction "under the law of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *Lockhart*, 577 U.S. at 348 (quoting 18 U.S.C. § 2252(b)(2)); *see, e.g., United States v. Miller*, 819 F.3d 1314,

6

1317 (11th Cir. 2016) (holding that "25-year statutory mandatory minimum in § 2251 applies to any defendant . . . with a prior conviction relating to 'aggravated sexual abuse' or 'sexual abuse,' whether or not that conviction involved a minor").

In *Lockhart* the relevant recidivist enhancement applied if the Defendant had "a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." §2252(b)(2). Lockhart's prior sexual offense was a violation of First Degree Sexual Abuse under New York law, which occurs when a person subjects another person to sexual contact: 1) By forcible compulsion; 2) When the other person is incapable of consent by reason of being physically helpless; 3) When the other person is less than eleven years old; or 4) When the other person is less than thirteen years old and the actor is twenty-one years old or older. N.Y. Penal Law § 130.65 (2015). This First Degree Sexual Abuse was against Lockhart's 53-year-old girlfriend. The Supreme Court affirmed the conviction, holding that the recidivism enhancement provision applied to the prior state convictions whether or not the convictions involved a minor. *Lockhart*, 136 S. Ct. at 961.

In this case, the recidivist enhancement set forth in 18 U.S.C. § 2251(e) applies when the prior conviction was "relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children." Here, the prior offense of Sexual Offense in the Fourth Degree prohibits "1) sexual contact with another without the consent of the other; 2) . . . a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 4 years older than the victim; or 3) . . . vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 4 years older than the victim." Md. Code Ann., Crim. Law § 3-308(b) (2024). The victim in this case was a 16-year-old girl. PSR ¶ 51.

7

The recidivist enhancement language is similar in both this case and in *Lockhart*. This Court should find that even though the prior Maryland conviction of Fourth Degree Sex Offense does not require that the victim be a "minor or ward," the recidivist enhancement in § 2251(e) should apply because the proscribed conduct under Md. Code Ann., Crim. Law § 3-308(b)(1) categorically fits the definition of "relating to….sexual abuse." The digital penetration of V1's vagina, without her consent, was done for a purpose associated with sexual gratification and therefore it is the type of behavior contemplated by the § 2251(e) enhancement. Accordingly, the mandatory minimum term of imprisonment for both Count One and Count Two is 25 years.

IV.  **THE DEFENDANT SHOULD BE SENTENCED TO 70 YEARS' IMPRISONMENT AND LIFETIME SUPERVISION**

A sentence of 70 years of imprisonment, followed by a lifetime of supervised release, is sufficient but not greater than necessary to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

A.  **Nature and Circumstances of the Offense**

From January 2021 through June 2021, the Defendant communicated with minor females, including Victim A, Victim B, and Victim C, over internet-based applications and persuaded, coerced, and enticed them to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct and for the purpose of transmitting live visual depictions of such conduct.

Law enforcement learned from two separate internet-based chat applications that accounts associated with username "xxxxvendetta" on each service had uploaded images depicting child pornography. The account was traced back through service provider information to the Internet Protocol address assigned to the Defendant's residence in Beltsville, Maryland.

*Victim A*

8

Further investigation into the accounts from both chat applications revealed that the Defendant had exchanged depictions of child pornography with apparent minors, including Victim A. The Defendant, using username "xxxxvendetta," persuaded and enticed Victim A to send digital images and to transmit video of Victim A engaged in sexually explicit conduct, including digital masturbation, masturbation with objects, and lascivious exhibition of the anus, genitals, and pubic area of Victim A. Victim A was 15 years-old when she sent the images depicting sexually explicit conduct, and she lived in a state other than Maryland.

The Defendant enticed and persuaded Victim A through various means, including, for example, sending her pictures of other apparent minors engaged in sexually explicit conduct, flattering her, and sending her cash card codes for the purchase of lingerie and "school girl" outfits that Victim A had identified in texts to the Defendant.

For example, as entered into evidence at trial, the Defendant sent the following text (in part) to Victim A:

> Things I find irresistible about my babygirl [name of Victim A]:
> 1. The sound you make when you realize we are about to get kinky.
> 2. Your sensual expressions while you[']re pleasuring yourself to me.
> 3. How you look at me.
> 4. The amazing number of times you cum with me.
> 5. Your perfect sexy body and every delicious curve.
> 6. Your absolutely perfect[] sculpted [nickname for Victim A's genitalia]. I mean it when I say I could frame a a picture of her and look at it every day on my wall.
> 7. How you crave being daddy[']s lil cum slut and filthy whore.
> 8. Then being daddy[']s precious princess moments later.

As a result of the Defendant's enticement and persuasion, Victim A sent the Defendant images and videos and transmitted live video of herself engaged in sexually explicit conduct. For example, Victim A sent the Defendant a file with a title ending with the characters 1317d56~v4, that depicts Victim A masturbating and penetrating her vagina with the end of a silver and pink colored hairbrush. There are also multiple videos sent to the Defendant by Victim A of Victim A

9

masturbating with a pink sex toy. Victim A also sent the Defendant images of herself modeling lingerie that she had purchased with cash cards provided by the Defendant, including images in which Victim A lasciviously exhibited her genitals and pubic area.

*Victim B*

In at least March 2021, the Defendant also communicated with Victim B, a then 15-year-old girl, over an internet-based chat application. Victim B lived in a state other than Maryland. The Defendant enticed and persuaded Victim B to engage in sexually explicit conduct with the intent and for the purpose of producing visual depictions of the conduct.

Victim B encountered the Defendant in a chat group involving "Big-Little" activities with individuals dressing up in children's clothing, using pacifiers, and calling the Defendant "Daddy." Victim B and the Defendant also engaged in direct communications.

The Defendant, using the xxxxvendetta account and known to Victim B as "Brian," persuaded Victim B to send videos of herself masturbating. As a result, and as one example, on March 6, 2021, Victim B sent the Defendant a video file with a title ending in characters ccb48~v4. The file is a 1 minute and 37 second video of Victim B laying on her back, nude, on top of a vanity sink in a bathroom. Victim B's bare vagina is facing the camera, and she digitally penetrates her vagina before using an electric toothbrush to masturbate.

Among other things, the Defendant persuaded Victim B to engage in sexually explicit conduct by engaging in mutual masturbation sessions through the repeated exchange of videos. For example, on March 31, 2021, the Defendant and Victim B exchanged videos depicting sexually explicit conduct. From his xxxxvendetta account, the Defendant sent Victim B a video file with a filename ending in characters 209a56~v4 and depicting a white male masturbating his penis by hand. Multiple similar videos were sent by the Defendant to Victim B. Victim B then sent to the

Defendant a video file with a filename ending in characters 7729~v4 and depicting a pubescent female masturbating and digitally penetrating her vagina. In at least one of the videos sent by the Defendant to Victim B on March 31, 2022, the Defendant directs Victim B, by telling her what he wants her to do, and Victim B sends back a video in which she depicts herself engaged in sexually explicit conduct and complying with his instructions.

*Victim C*

From at least March 2021 and continuing into May 2021, the Defendant (on username "xxxxvendetta") communicated with Victim C, a then 11-year-old girl, over an internet-based chat application. The communications between the Defendant and Victim C were sexual in nature, with the Defendant asking directly for nude pictures of Victim C.

For example, as set forth at trial, the following is a portion of an April 13, 2021 text exchange between the Defendant and Victim C:

> the Defendant: Got any new nude pics of you hon?
> Victim C: no
> the Defendant: Lol Ive stroked to the two nudes of you I have soooo much
> Victim C: rlly ?lolz
> the Defendant: Yeah haha
> the Defendant: You[']re the first girl I think of in the morning
> the Defendant: I love your body too
> Victim C: heh thx
> the Defendant: You bet lol
> Victim C: I think your lying lolz
> ***
> the Defendant: I got a folder called [Victim C name]
> Victim C: wymmm
> the Defendant: [the Defendant sends file with filename ending with characters 81d297]
> the Defendant: I look at this folder every morning
> the Defendant: When I masturbate
> ***
> the Defendant: That's your naked body right?
> Victim C: yea lolz
> the Defendant: Ok hehe good
> the Defendant: You see now why I need new nudes of you?

11

    Victim C:    yea lolz
    the Defendant: Hehe
    the Defendant: So will you hook me up the next time you take nude pics?
    Victim C:    yeaa
    the Defendant: Thx bby!!

On April 13, 2021, as part of the preceding chat, the Defendant sent Victim C an image with a filename ending with characters 81d297. The image depicts a screenshot of a picture album. Within the image, a nude pubescent minor female, Victim C, is shown with her bare breasts and vagina exposed.

On May 15, 2021, the Defendant and Victim C exchanged texts via an internet-based chat application. The Defendant and Victim C discussed how she was at her father's house and would rather have a voice call when she is at her mother's. A portion of the exchange was as follows:

    the Defendant: Let's cum on cam the first time you[']re alone next ok
    Victim C:    okay
    the Defendant: Good girl
    Victim C:    thx ddy
    the Defendant: Yw bby
    the Defendant: Hugs and kisses my lil sweetie

The Defendant communicated with Victim C with the intent and for the purpose of having her create visual depictions—including images and live transmissions—of sexually explicit conduct to share with him. The Defendant showed no signs of stopping his criminal activity until the day of his arrest in March 2022.

The Defendant's conduct in this case was predatory. The Defendant was motivated to manipulate children and did, earning their trust by lying to them about being their friend and caring for them. He then exploited that trust and the children he had groomed. The evidence shows that the only thing that this Defendant cared about—besides trying not to get caught—was what he wanted from them. . . what he could get from them.

During the period that he criminally exploited the minor victims in the above-captioned

case, the Defendant was already required to register as a Sex Offender in Maryland for previous sexually exploitive conduct involving another minor. This registration requirement was a result of his previous conviction for 4th Degree Sex Offense and 2nd Degree Assault in Montgomery County, Maryland. The nature and circumstances of the offenses support a term of imprisonment of 70 years, including a 25-year mandatory minimum sentence for Victim A, another consecutive 25-year sentence for his conduct in connection with Victim B, a consecutive (to Count One and count Two) 10-year mandatory minimum sentence for Victim C, and 10 years consecutive to all remaining counts for Count Four, which carries a mandatory 10-year consecutive sentence.

### B.     History and Characteristics of the Defendant

This is not the first time that the Defendant has had inappropriate interactions with teenage girls. The Defendant was first arrested for child sexual abuse on September 8, 2016. He was charged with one count of Fourth Degree Sex Offense (CR 3-308 (b)(1)), one count of Child Sexual Abuse (CR 3-602 (b)(1)), and one count of Second Degree Assault (CR 3-203). He plead guilty to Fourth Degree Sex Offense (CR 3-308 (b)(1)), one count of Child Sexual Abuse (CR 3-602 (b)(1)), and one count of Second Degree Assault. Although the charges are illustrative, the circumstances surrounding the offenses require significant attention.

The Victim (V1) stated that during the summer of 2014, when V1 was 14 years old, the Defendant began to show and interest in her wellbeing. More specifically, the Defendant began to help V1 with her social anxiety performing music/singing in church. V1 had known the Defendant since she was in middle school. At some point shortly after the summer of 2014, the Defendant began texting V1 frequently. In those texts the Defendant would tell V1 that she was attractive and the text messages soon became graphic and sexual in nature. The Defendant would text V1 and tell her that he wanted to have sexual intercourse with V1 (oral sex and vaginal sex).

13

The Defendant would also send V1 pictures of his genitalia via text and Skype and he would ask V1 to send him sexually explicit pictures of her. V1 stated that these text messages, solicitations, and pictures made her feel uncomfortable but that she did not know what to do about it. While V1 believed what the Defendant was doing was wrong, she felt compelled not to say or do anything because the Defendant was so nice to her and helpful in dealing with her social anxiety and other things.

     V1 stated that in or about April or May 2016, there was a parish-sponsored youth ministry overnight event called a "lock in" held at a church in Montgomery County, Maryland. At this time, V1 was 16 years old. At this lock-in, the Defendant met V1 in a private place near the bathrooms in the school portion of the parish. The Defendant grabbed V1 by the waist and began kissing her. The Defendant put his tongue in V1's mouth. The Defendant placed his hand on V1's breasts under her shirt and bra (touching her skin). The Defendant then placed his hand in V1's pants inside her underwear and he massaged her vagina and placed his finger inside of her vagina more than five times.

     V1 stated that she did not want to engage in this activity with the Defendant but that she felt that she had no choice because the Defendant had helped her with so many things up to that point in time. V1 stated that this is the only time that the Defendant had kissed or touched her in this way but that he had solicited this type of conduct on numerous occasions prior (and subsequently).

     V1 confided in a close friend what had happened which is how the incident eventually came to the attention of the parish. V1 was very conflicted about her relationship with the Defendant. While she did not want to participate in the sexual incident that occurred at the "lock-in" described above, she was not a willing participant in the incident. She felt helpless to resist or object to the Defendant's advances and solicitations based upon their historical relationship and

her belief that the Defendant had been so helpful and kind to her in the past.

Law enforcement officers interviewed V1's friend, herein referred to as F1. V1 had told F1 about the "lock-in" incident while the two were on a trip in or about July 2016. F1 had copies of text messages between V1 and the Defendant over a period of time. In the text messages the Defendant is asking to meet with V1 and he references sexual activity. In those text messages V1 states that she thinks that getting together for sexual activity would be "wrong".

F1 also provided copies of text messages between her and the Victim in which the Victim states that she never wanted to have a sexual relationship with the Defendant and that she feels like the Defendant is a "pedophile," that he is only attracted to "young girls," and that she "hate[s] him and care[s] for him at the same time." F1 also shared her impressions of Defendant and that she felt that his interactions with other young girls on the July trip was inappropriate—especially given the Defendant's age and his role as the group leader/caretaker.

These facts show how the Defendant groomed the victim in the Maryland state case in the same way that he groomed Victims A, B and C in this case. Here the Defendant's conduct spanned from January 2021 through June 2021. As a result of the COVID-19 pandemic, many people were severely limiting their movements outside of their homes. People were not going to group activities. Many churches were still closed. So the Defendant, with severely limited access to children, went online to find them.

The conduct and the number of victims indicate that the Defendant's behavior is compulsive. He was not deterred by the fact that he was on probation, supervised by the Maryland Department of Public Safety and Correctional Services. PSR ¶ 51. That is, he committed these acts during the same period that he was reporting to his probation officer and allegedly attending treatment sessions. *Id*. Getting caught in 2016, serving a prison sentence, being supervised,

15

attending treatment sessions, and being required to register as a sex offender were not enough to prevent this Defendant from reoffending. A lengthy federal sentence would deter the Defendant where previous efforts failed. It would also better protect minors.

The Defendant's self-reporting in the PSR indicates that he received a good education and that he comes from a good family. He obtained his master's degree in theological studies from the Pontifical Institute on Studies of Marriage and Family in 2009. He noted this school is part of Catholic University America, located in Washington, D.C. PSR ¶ 89. He also obtained his college degree from Desales University in Center Valley, Pennsylvania in 2006. *Id.* ¶ 90. It appears that he had the resources and the support of a mother and father who worked hard to afford a single-family house for the Defendant and his younger sister. *Id.* ¶ 60. His father traveled internationally, and his mother left her teaching job to stay home to raise the Defendant and his sister. *Id.* There were no mental health issues or substance abuse history in the Defendant's home. *Id.* This is the type of household where the Defendant would have had the resources to avoid engaging in criminal activity. The Defendant also had a consistent work history. PSR ¶ 93-100. This Defendant had every opportunity to choose a different path. But instead, he rejected those opportunities and chose to again prey on young girls.

    **C.**    **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

In constructing the Defendant's sentence, the Court should take into account the seriousness of the Defendant's conduct, the need to promote respect for the law, and the need to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). A sentence of 70 years imprisonment would promote respect for the law and would be just punishment considering the Defendant's criminal conduct against these three teenage girls. A lengthy sentence is needed, in

general, to deter others. There will be other adult men who are poised to go into the darkness of the internet and prey on young, lonely, vulnerable girls. This Court must take the opportunity to impose a sentence that deters potential future defendants from exploiting young victims. Only a substantial sentence will accomplish this purpose.

This Defendant would be a continuing danger to the public, especially to young, vulnerable girls, if he is not imprisoned for a lengthy period. A sentence above the mandatory minimum of 35 years would protect the public and would afford deterrence to those who would prey upon vulnerable victims like the defendant did. It would send a message to would-be sex offenders that they will be severely punished if they engage in such conduct.

Additionally, a lifetime period of supervised release would aid in providing specific deterrence for the Defendant. These three girls were not his first victims. Absent law enforcement intervention, there is no reason to think that they would not have been his last. As this Court heard from a victim during this trial, the Defendant befriended her, he listened to her problems, he supported her, he gave her advice, he was kind to her. He acted like her friend. But he was not her friend. He was manipulating her. All he cared about was getting what he wanted. Upon any release from imprisonment, the Defendant needs to be closely monitored to ensure that he never exploits another girl again for the rest of his life.

## V. VICTIM IMPACT AND RESTITUTION

The Government has remained in contact with Victim A and with the mother of Victim B. Victim A has not yet provided a written victim impact statement. However, Victim A plans to be present at the sentencing and address the Court in person at that time. If anyone else wishes to address the Court orally or provide a victim impact statement, the Government will promptly notify the Court and defense counsel. Regarding restitution, the Government has requested information

from the victims regarding restitution pursuant to 18 U.S.C. §1593. The Government has not received any response from them regarding any restitution that they have identified. As such, the Government does not anticipate any restitution requests in this case as of this filing.

## VI.     CONCLUSION

For the reasons stated herein, the Government respectfully requests that the Court impose a sentence of 25 years for Count One (Production of Child Pornography), 25 years for Count Two (Production of Child Pornography), 10 years for Count Three (Coercion and Enticement of a Minor) and 10 years for Count Four (Commission of a Felony Offense Involving a Minor by a Registered Sex Offender) for a total of 70 years of imprisonment. The Government also respectfully recommends that a lifetime term of supervised release accompany this sentence. The Government respectfully submits that the recommended sentence would be sufficient, but not greater than necessary, to satisfy the goals set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Erek L. Barron
United States Attorney

By:      */s/ LaShanta Harris*
LaShanta Harris
Assistant United States Attorney